774 A.2d 674 (2001)
340 N.J. Super. 462
Maritza LEON, on behalf of herself and all others similarly situated, Plaintiff-Appellant,
v.
RITE AID CORPORATION, and Rite Aid of New Jersey, Inc., Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Argued May 8, 2001.
Decided May 30, 2001.
*675 Bruce Greenberg, Newark, argued the cause for appellant (Lite DePalma Greenberg & Rivas, Seeger Weiss, and The Cuneo Law Group, attorneys; Allyn Z. Lite, Newark, on the brief).
Robert A. White, Princeton, argued the cause for respondent (Morgan, Lewis & Bockius, attorneys; Mr. White, on the brief).
Before Judges KESTIN, CIANCIA and ALLEY.
*676 The opinion of the court was delivered by CIANCIA, J.A.D.
Plaintiff Maritza Leon's consumer fraud complaint was dismissed with prejudice for failure to state a claim upon which relief could be granted. R. 4:6-2(e).[1] She appeals and we reverse.
As detailed subsequently, plaintiff's complaint alleged that defendants Rite Aid Corporation and Rite Aid of New Jersey, Inc. (collectively Rite Aid), violated the New Jersey Consumer Fraud Act. Rite Aid advertised that its merchandise, including prescription drugs, was sold at the lowest and best prices when, in fact, different prices were charged to different customers for the same prescription drugs and Rite Aid's own list prices were increased for certain kinds of transactions.
Initially, we emphasize the indulgent standard under which a plaintiff's complaint is evaluated when it is contended that a cause of action has not been stated:
We approach our review of the judgment below mindful of the test for determining the adequacy of a pleading: whether a cause of action is `suggested' by the facts. Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 [536 A.2d 237] (1988). In reviewing a complaint dismissed under Rule 4:6-2(e) our inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint. Rieder v. Department of Transp., 221 N.J.Super. 547, 552 [535 A.2d 512] (App.Div.1987). However, a reviewing court `searches the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.' Di Cristofaro v. Laurel Grove Memorial Park, 43 N.J.Super. 244, 252 [128 A.2d 281] (App.Div.1957). At this preliminary stage of the litigation the Court is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint. Somers Constr. Co. v. Board of Educ., 198 F.Supp. 732, 734 (D.N.J.1961). For purposes of analysis plaintiffs are entitled to every reasonable inference of fact. Independent Dairy Workers Union v. Milk Drivers Local 680, 23 N.J. 85, 89 [127 A.2d 869] (1956). The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.
[Printing Mart-Morristown v. Sharp Electronics Corp., 116 N.J. 739, 746, 563 A.2d 31 (1989).]
The continuing viability of these precepts is not open to question. F.G. v. MacDonell, 150 N.J. 550, 556, 696 A.2d 697 (1997).
Plaintiff's complaint, read generously, sets forth the following facts, among others. Rite Aid prominently advertised that it had "the lowest and best prices" on pharmaceuticals. It also actively promoted a best-price guarantee, whereby it would "meet or beat" competitors' prescription prices. Rite Aid pharmacists were encouraged to, and did, charge more than Rite Aid's stated retail price to uninsured customers and other pharmacy customers who were unlikely to challenge its prices. Rite Aid directed its pharmacists to overcharge uninsured pharmacy customers, as well as those who were purchasing "emergency-type" drugs, or drugs designed to remedy an acute condition. *677 These overcharges, referred to as positive overrides, increased prescription prices over Rite Aid's stated retail price from fifty cents to as much as fifteen dollars per prescription. Rite Aid directed and required its pharmacists to raise prescription prices above the Rite Aid retail price on every emergency room prescription, on the first refill of any antibiotic prescription and on certain controlled substances, such as pain killers. In addition, plaintiff asserted that Rite Aid pharmacists were directed to "round up" the stated retail price to the next figure ending in .89 on every prescriptionfor example, if a prescription's stated retail price was $7.09, Rite Aid pharmacists were required to raise the price to $7.89. If a pharmacy customer asked a prescription price before the prescription was filled, the pharmacist would quote the normal retail price as stated in the company's computer system. When Rite Aid was caught failing to comply with its lowest price program, Rite Aid managers described the "error" as an oversight, and advised concerned customers that the computer system would be updated to reflect the lower price. As part of the alleged "scheme," Rite Aid intentionally sought to, and did, deceive its pharmacy customers into believing that they would be provided Rite Aid's best available price when, in fact, they were charged prices well in excess of Rite Aid's stated retail price.
We believe it clear that these allegations constitute a cause of action under the Consumer Fraud Act, N.J.S.A. 56:8-1 to -20. The goal of the Act is to "protect the consumer against imposition and loss as a result of fraud and fraudulent practices by persons engaged in the sale of goods and services." Fenwick v. Kay American Jeep, Inc., 136 N.J.Super. 114, 117, 344 A.2d 785 (App.Div.1975), rev'd on other grounds, 72 N.J. 372, 371 A.2d 13 (1977); Marascio v. Campanella, 298 N.J.Super. 491, 500, 689 A.2d 852 (App. Div.1997). It has been said that the "history of the Act is one of constant expansion of consumer protection." Gennari v. Weichert Co. Realtors, 148 N.J. 582, 604, 691 A.2d 350 (1997). When the alleged violation is an affirmative act, plaintiff need not prove defendant's intent nor even necessarily actual deceit or fraud. Cox v. Sears Roebuck & Co., 138 N.J. 2, 17-18, 647 A.2d 454 (1994); Skeer v. EMK Motors, Inc., 187 N.J.Super. 465, 470, 455 A.2d 508 (App.Div.1982). Any unconscionable commercial practice is prohibited. Ibid. It has consistently been emphasized that the Act is remedial legislation and should be liberally construed in favor of the consumer. Lettenmaier v. Lube Connection, Inc., 162 N.J. 134, 139, 741 A.2d 591 (1999); Gennari, supra, 148 N.J. at 604, 691 A.2d 350; Cox, supra, 138 N.J. at 15 16, 647 A.2d 454; Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69, 494 A.2d 804 (1985). A plaintiff need not even show reliance on the violation of the Act as long as an ascertainable loss resulting from defendant's conduct is demonstrated. Carroll v. Cellco Partnership, 313 N.J.Super. 488, 502, 713 A.2d 509 (App.Div.1998).
Some types of false advertising, although not all, are expressly prohibited by the regulations implementing the Act. See e.g., N.J.A.C. 13:45A-9.1 to -9.8 and specifically, N.J.A.C. 13:45A-9.2(a)(9) prohibiting, "[t]he making of false or misleading representations of facts concerning the reasons for, existence or amounts of price reductions, the nature of an offering or the quantity of advertised merchandise available for sale." An advertisement violating those regulations is per se a violation of the Act. Cox, supra, 138 N.J. at 17, 647 A.2d 454; Feinberg v. Red Bank Volvo, Inc., 331 N.J.Super. 506, 510, 752 A.2d 720 (App.Div.2000).
*678 Here, plaintiff does not allege a regulatory violation as such. Advertisements allegedly in violation of the Act, but not the subject of a specific regulation, are best left for jury determination. In Chattin v. Cape May Greene, Inc., 216 N.J.Super. 618, 639, 524 A.2d 841 (App.Div.), certif. denied, 107 N.J. 148, 526 A.2d 209 (1987), we stated:
But when an advertisement is not covered by a specific rule or regulation, it must be determined through adjudication `whether the ad itself is misleading to the average consumer.' Barry v. Arrow Pontiac, Inc., 100 N.J. 57, 69 [494 A.2d 804] (1985); see also Kugler v. Romain, 58 N.J. 522 [279 A.2d 640] (1971); D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 25-32 [501 A.2d 990] (App.Div.1985). Although there may be some circumstances in which an advertisement is so patently deceptive that a violation of the Consumer Fraud Act may be found as a matter of law, the determination whether an advertisement is misleading is ordinarily for the trier of facthere the juryto decide. Indeed, a jury would appear especially well suited to determine the impact of an advertisement upon `an average consumer.'
The relevant portion of the Consumer Fraud Act reads as follows:
The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement or any merchandise ... is declared to be an unlawful practice....
[N.J.S.A. 56:8-2.]
This statutory scheme distinguishes between wrongs committed by affirmative acts and wrongs committed by a failure to act. Cox v. Sears Roebuck & Co., supra, 138 N.J. at 17, 647 A.2d 454. As to those violations committed by omission, a plaintiff must demonstrate a defendant's knowledge and intent. In Fenwick, the Court said, in the context of the above-quoted statutory language, "the requirement that knowledge and intent be shown is limited to the concealment, suppression or omission of any material fact." Fenwick, supra, 72 N.J. at 377, 371 A.2d 13. Implicit therein is that a plaintiff must also show that the omitted information related to a material fact.
However, when a plaintiff's claim is that there was an affirmative act such as fraud or deception, it is not necessary that plaintiff show either defendant's knowledge or intent or that the misrepresentation was of a material fact. In the present case, the trial court was critical of plaintiff's complaint because there was no showing of a false statement of material fact and therefore, in its view, "there could be no violation of ... [the] consumer fraud act." The court relied upon Rodio v. Smith, 123 N.J. 345, 587 A.2d 621 (1991), for that proposition. In our view, the trial court misconstrued Rodio and thereby reached an erroneous interpretation of the statute.
In Rodio, the Court was concerned in part with whether defendant's use of the slogan, "[y]ou're in good hands with Allstate," constituted either common law fraud or a violation of the Consumer Fraud Act. The Court found that the challenged language did not rise to the level of common law fraud because the slogan was not a statement of material fact. The slogan was also not a violation of the Consumer Fraud Act because it was mere "puffery" and therefore not false, deceptive, misrepresentative, or "any other unlawful *679 practice within the ambit of the Consumer Fraud Act." Id. at 352, 587 A.2d 621.
We do not read Rodio for the proposition that a plaintiff must prove a misstatement of material fact when claiming an affirmative act of misrepresentation, although the abbreviated manner in which the Court therein quoted the statute might lead to such a conclusion. Grammatically, "material fact" is within the second part of a compound subject describing that which the statute declares to be an unlawful practice. The statutory elements are in the disjunctive. D'Ercole Sales, Inc. v. Fruehauf Corp., 206 N.J.Super. 11, 22, 501 A.2d 990 (App.Div.1985). In Fenwick, the Court stated that, "[t]he capacity to mislead is the prime ingredient of deception or an unconscionable commercial practice." Fenwick, supra, 72 N.J. at 378, 371 A.2d 13; accord In re Shack, 177 N.J.Super. 358, 363, 426 A.2d 1031 (App. Div.), certif. denied, 87 N.J. 352, 434 A.2d 95 (1981). A false statement of fact is not, however, an essential ingredient of a plaintiff's cause of action based on affirmative wrongdoing. The trial court's statement that, "absent a finding of false statement of material fact, there could be no violation of a consumer fraud act ..." in our view is a misreading of Rodio.
To the extent plaintiff's complaint may be construable as alleging that the phrase "lowest and best" price offends the Consumer Fraud Act because defendant failed to explain the actual import of the slogan, then "material fact" would be an ingredient of that claim of omission. Plaintiff's detailed complaint, however, is more than sufficient to withstand attack under R. 4:6-2(e), even if the claim is construed as a failure to specify an omitted material fact. It is well to remember that the Consumer Fraud Act is aimed at more than the stereotypic con man. "The statutory and regulatory scheme is also designed to promote the disclosure of relevant information to enable the consumer to make intelligent decisions in the selection of products and services." Division of Consumer Affairs v. G.E. Co., 244 N.J.Super. 349, 353, 582 A.2d 831 (App.Div.1990).
Here, defendant allegedly advertised that it sells merchandise, including its pharmaceuticals, for the lowest and best price. At the same time, defendant allegedly had a two-tier pricing system for its own customers that was not only undisclosed, but was actively covered up. That pricing system allegedly distinguished between customers with and without insurance and among customers with certain kinds of prescriptions. The implication is that defendant's policy, which may be ongoing, adversely affects those least likely to exercise a choice of vendorse.g., those who come with prescriptions from an emergency room and those who need to refill a prescription for an antibiotic. According to the complaint, defendant had a set of prices that was increased for certain customers. It also had a policy of rounding prices up by a designated amount. While these practices may not be illegal in and of themselves, when they are held up to the "best and lowest" price advertising, they could very well constitute a violation of the Consumer Fraud Act in the eyes of a jury.
We believe the trial court erred in its approach to both R. 4:6-2(e) and to the Consumer Fraud Act itself. Plaintiff's complaint was not given the generous reading it was entitled to under Printing Mart, supra, and the trial judge did not confine herself to an evaluation of the complaint. The judge's references to consumers with coupons and to hospital charges and medical care providers were inappropriate in the context of an R. 4:6-2(e) evaluation. A plaintiff's obligation on *680 such a motion is not to prove the case but only to make allegations which, if proven, would constitute a valid cause of action. Contrary to the emphasis of the trial court, the gravamen of plaintiff's complaint is not Rite Aid's failure, as such, to inform its customers of specific prices or of a variable pricing policy. The absence of that information only becomes relevant when juxtaposed against Rite Aid's advertising. Plaintiff contends "best and lowest" price advertising contains an essential assurance that those who patronize Rite Aid will receive consistent prices that are not modified for reasons that would be unsuspected by the average consumer. Plaintiff does not complain that someone with a coupon is getting a better price or that senior citizens may receive a discount or even that the "meet or beat" price policy by itself is deceptive. Those are all circumstances well known to the average consumer. What may not be well known or reasonably to be expected, in light of a "lowest and best" price policy, is that a customer with, for instance, a cholesterol prescription will pay a price from a designated list of prices, while a customer with an antibiotic prescription will pay the list price plus a premium.
Whether the advertising is, in fact, deceptive should not be determined as a matter of law on a R. 4:6-2(e) motion. On such a motion, facts alleged by the plaintiff are held up to the applicable law to determine whether a cause of action is suggested thereby. Where the applicable law is a statute, such as the Consumer Fraud Act, which our courts have consistently held should be given a liberal interpretation in favor of consumers, then the "generous and hospitable" approach of a R. 4:6-2(e) analysis takes on an even greater significance.
The parties have expended a good deal of effort discussing the import of decisions from other jurisdictions, most of which involved failed attacks on Rite Aid's pricing policies. We are satisfied that in this instance the law in New Jersey provides answers to the issues raised and we need not survey other jurisdictions. Additionally, we note that the allegations or causes of action in many of the out-of-state cases cited to us do not mirror those raised in plaintiff's complaint.
Finally, at this stage of the proceedings, we can find no basis for the trial court's concern that plaintiff has not shown a specific ascertainable loss or that plaintiff's claim for unjust enrichment is unsupported by the allegations of the complaint.
Accordingly, the dismissal of plaintiff's cause of action is reversed and her complaint is reinstated in its entirety.
Reversed and remanded.
NOTES
[1] Although styled as a class action, no determinations concerning maintainability were made prior to dismissal of the suit. See R. 4:32-1 to -3.